IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| J. MICHAEL FOLEY, individually and on behalf of all others similarly situated, | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No. 3:14-cv-877-GMB<br>) |
| GREENE COMMUNICATIONS, INC., MAGNOLIA GREENE, INC., and R.M. GREENE, INC. d/b/a CABLE TV OF EAST ALABAMA, | )<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

**ORDER GRANTING CONSENT MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT, FOR AN INCENTIVE AWARD, AND FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES**

The court having reviewed and considered the Consent Motion for Final Approval of Class Action Settlement, for an Incentive Award, and for an Award of Attorneys' Fees and Expenses (the "Motion") submitted by Plaintiff J. Michael Foley (Doc. 46), as well as the supporting documents, in the above-captioned case (the "Action"); and having reviewed and considered the proposed settlement (the "Settlement"), as set forth in the Settlement Agreement dated October 8, 2015, submitted as Exhibit A to the Joint Motion for Preliminary Approval of Settlement Agreement (Doc. 33) (the "Settlement Agreement"); and having held a final fairness hearing on August 30, 2016 (the "Final Fairness Hearing"); the court hereby GRANTS the Motion (Doc. 46) and makes the following findings:

1

1. Capitalized terms used in this Final Approval Order that are not otherwise defined herein have the meaning assigned to them in the Settlement Agreement.

2. The court has jurisdiction over the subject matter of this Action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d). Moreover, this court has personal jurisdiction over Defendants, Greene Communications, Inc.; Magnolia Greene, Inc.; and R.M. Greene Inc. d/b/a Cable TV of East Alabama ("CTVEA").[1]

3. Since the court's preliminary approval of this Settlement, all Settlement Class Members have been provided notice in accordance with the court's Preliminary Approval Order (Doc. 43). *See* Doc. 44-7 at ¶¶ 2–10 (Declaration of Tina Chiango ("Chiango Decl."), attached as Exhibit F to the Declaration of W. Tucker Brown (Doc. 44-1, the "Brown Decl.").

4. The Settlement Class is defined as follows:

> all persons in the United States who subscribed to CTVEA for digital cable and paid CTVEA a monthly rental fee for an accompanying set-top box, excluding a digital television adapter that converts analog to digital video, during the period August 10, 2010 through the effective date of the settlement.[2]

5. The court finally finds and concludes, for settlement purposes only, that: (a) the Settlement Class Members are so numerous as to make joinder of them impracticable; (b) there are questions of fact and law common to the Settlement Class; (c) Class

---

[1] Plaintiff and CTVEA are collectively referred to herein as the "Parties."

[2] Excluded from the Settlement Class are the following: counsel for Plaintiff; CTVEA officers, directors and employees, any entity in which CTVEA has a controlling interest, and the affiliates, legal representatives, attorneys, heirs or assigns of CTVEA; any federal, state or local governmental agency; and the Court and the Court's immediate family members and staff.

Representative's claims and the defenses asserted thereto are typical of the claims of Settlement Class Members and the defenses asserted thereto; (d) the Class Representative and Class Counsel have fairly and adequately protected the interests of Settlement Class Members throughout this action; and (e) a class action is superior to all other available methods for fairly and efficiently resolving this action and provides substantial benefits to both the litigants and the court. The court therefore determines that this action satisfies the prerequisites for class certification for purposes of settlement, pursuant to Fed. R. Civ. P. 23(b)(3), and the court finally certifies the Settlement Class for settlement purposes.

6. The Notice: (i) constituted the best notice to members of the Settlement Class that was practicable under the circumstances; (ii) constituted notice that was reasonably calculated, under the circumstances, to apprise Settlement Class members of the terms of the Settlement, their right to object and to appear at the Final Fairness Hearing or to exclude themselves from the Settlement, and the binding effect of the Settlement; (iii) was reasonable and constituted due, adequate and sufficient notice to persons affected by and/or entitled to participate in the Settlement and Final Fairness Hearing; and (iv) fully complied with the requirements of due process and Rule 23 of the Federal Rules of Civil Procedure.

7. As of today, no potential Settlement Class Members have opted out of the Settlement, and no objections to the Settlement have been filed.

8. The court has held the Final Fairness Hearing to consider the fairness, reasonableness and adequacy of the Settlement, and provided an opportunity for any

objectors to present their arguments at the Final Fairness Hearing.

9. Based on the record before it, the court finds that the Settlement is the product of good faith, arm's-length negotiations between the Parties.

10. Also based on the record before it, the court finds that the Settlement, as provided for in the Settlement Agreement, is in all respects fair, reasonable, adequate and proper and in the best interest of the Settlement Class.

### I. SETTLEMENT FAIRNESS, ADEQUACY, AND REASONABLENESS

11. The Eleventh Circuit has set forth six factors to consider in determining whether a proposed settlement is fair, adequate, and reasonable: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which the settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of the proceedings at which the settlement was achieved. *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984) (citations omitted). The court finds that these factors weigh in favor of approving the Settlement.

**1.    The Likelihood of Plaintiff's Success at Trial**

12. As to the first *Bennett* factor, the likelihood of Plaintiff's success at trial, the court finds that this case involves complex legal and factual issues that have been hotly contested, and would almost certainly continue to be contested throughout the remaining litigation of the Action. When they reached agreement on the terms of the Settlement, the Parties had engaged in limited discovery, but had not yet briefed and argued class certification, which would be a lengthy and expensive undertaking,

4

including production and interpretation of data and expert work and testimony, along with the time and expense associated with the merits-related discovery following the class certification stage.  Thus, while counsel for the Parties had become familiar enough with the legal and factual issues in the case to do a thorough assessment of their respective chances for success and the risks involved in continuing to litigate the Action, there remained a great deal to be done in the Action before its final resolution.  The outcome on class certification and the ultimate outcome on the merits at summary judgment were uncertain for both Parties.  As the court recently learned, there have been a wide variety of outcomes in similar cases across the country.  In *Healy v. Cox Comms., Inc.*, No. 5:12-ml-02048-C, Dkt. 439 (W.D. Okla., Nov. 12, 2015), the court certified a class and the case proceeded to trial, where the jury rendered a verdict for the plaintiff class, but the court subsequently granted defendant's Federal Rule of Civil Procedure 50 motion, and the case is now on appeal to the Tenth Circuit.  In *Jarrett v. Insight Comms. Co., L.P.*, No. 3:09-cv-93-JHM-JDM, 2014 WL 3735193 (W.D. Ky. July 29, 2014), the defendant obtained summary judgment, and in *Parsons v. Bright House Networks, Inc.*, No. 2:09-cv-00267-AKK (N.D. Ala. Jan 9, 2015), a settlement was approved.  With this wide range of outcomes, there was significant litigation risk for both Parties in this Action.  Accordingly, this factor supports final approval of the proposed Settlement.

2. **The Possible Range of Recovery at Trial and the Settlement Amount in Relation to the Possible Range of Recovery**

　　　　13.　　The second and third factors—the possible range of recovery at trial and the Settlement amount in relation to the possible range of recovery—also support final

approval.

14. Plaintiffs' potential range of recovery is in dispute in this Action. Assuming that despite the challenges to Plaintiff's damages calculations, Plaintiff could prove damages at the low end of his expert's original estimate—$1.00 per month per customer, or $50 per customer total—the Settlement provides a substantial recovery that is fair and adequate under relevant case law. This is true notwithstanding the fact that, if Plaintiff and the class were successful in proving liability and the amount of their actual damages, these damages would be trebled under the Sherman Anti-Trust Act, 15 U.S.C. § 1, bringing the total potential damages to $150 per customer.

15. As part of the Settlement consideration, each Settlement Class Member who is no longer a subscriber and files a claim will receive $20 in cash (approximately 13% of the potential treble damages), and a Settlement Class Member who is a current subscriber will get a $30 account credit as part of the Settlement (20% of the potential treble damages). Other courts have frequently found similar recoveries to be fair and adequate. *See, e.g.*, *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1346 (2011) ("[S]tanding alone, nine percent or higher constitutes a fair settlement even absent the risks associated with prosecuting these claims."); *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988) ("A settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery."); *Newbridge Networks Sec. Litig.*, 1998 WL 765724, *2 (D.D.C. Oct. 23, 1998) ("[A]n agreement that secures roughly six to twelve percent of a potential recovery . . . seems to be within the targeted range of reasonableness."); *In re Rite Aid Corp. Sec. Litig.*, 146 F.

Supp. 2d 706, 715 (E.D. Pa. 2001) (noting that since 1995, class action settlements have typically "recovered between 5.5% and 6.2% of the class members' estimated losses"); *In re Linerboard Antitrust Litig.*, 296 F. Supp. 2d 568, 581 (E.D. Pa. 2003); *Bennett*, 787 F.2d at 986 (holding that monetary relief of 6% of potential total recovery was adequate in antitrust case where injunctive relief also recovered).

16. Because the Settlement avoids the risks of protracted litigation and provides Settlement Class Members with certain, immediate relief, this factor supports approval of the Settlement in this case.

17. Significantly, the monetary relief to Settlement Class Members is only one aspect of the Settlement's consideration. CTVEA has also agreed to provide prospective relief designed to address the antitrust issues that Plaintiff alleged. Specifically, CTVEA has agreed to clarify that its subscribers can use certified, compatible customer-owned third-party cable set-top boxes to receive certain of its services and to clarify its policies with respect to the use of customer-owned third-party cable set-top boxes (currently using CableCARD technology), including clear disclosures on its website providing customers with notice that they are free to use certified third-party set-top boxes that are compatible with CTVEA's cable system. This prospective relief adds value to the Settlement for all Settlement Class Members who are current subscribers.

18. Assuming that CTVEA's clarifications regarding its set-top box policies and practices going forward will save customers the same $1 per month per customer that was used to estimate potential damages, each customer is receiving that value for the term of the Settlement Agreement, which runs through December 1, 2018 (*see* Doc. 33-1

at ¶ 8a), approximately 2.25 years. At one dollar per month, the injunctive relief is valued at $12.00 per year, or $27 over the term of the Settlement Agreement. Added to the $30 available to each current customer, this brings the value of the settlement to each Settlement Class Member who is a current customer to $57, which is approximately 38% of the potential treble damages of $150 per existing customer.

19. Given that the Settlement immediately restores to Settlement Class Members a substantial percentage of the potential damages in this case and corrects the conduct complained of in the Complaint, the court finds that the Settlement provides a substantial recovery for the Settlement Class.

**3.     The Complexity, Expense, and Likely Duration of Continued Litigation**

20. As to the fourth *Bennett* factor, the complexity, expense, and likely duration of continued litigation, the complexity of antitrust cases such as this one is well known. If this Settlement is not approved, a substantial amount of work will need to be performed by both Parties, including the completion of fact and expert discovery, briefing motions for summary judgment, designation of witnesses and exhibits, preparation of pretrial memoranda and proposed findings of fact and conclusions of law, presentation of witnesses and evidence at trial, and briefing a probable appeal regardless of the trial's outcome.

21. Furthermore, because of the complexity of the issues, the Parties would be required to consult with numerous experts to understand and support or defend the allegations of the Complaint and the damages calculations. Given the nature of this case, any judgment at trial would likely be appealed by the losing party. As a result, continued

litigation would have risked delaying the class's potential recovery for years, further reducing the value of any such recovery. The Settlement resolves the case without any further delay and provides the Settlement Class an immediate and certain recovery, while also correcting the practices complained of in the Complaint. Thus, this factor also weighs in favor of final approval of the proposed Settlement.

**4.     Opposition to the Settlement**

22.     Despite notice to thousands of potential Class Members, no Class Members have opted out of the Settlement Class, and no objections to the Settlement have been received by the Settlement Administrator or by the Parties' counsel. This is a strong indicator of the fairness of a settlement. *E.g.*, *Ass'n for Disabled Americans, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 617 (S.D. Fla. 2002).

**5.     The Stage of the Proceedings at the Time of Settlement**

23.     The next *Bennett* factor, the stage of the proceedings and the amount of discovery completed, also supports final approval. Although limited discovery has been taken in this case, before filing the Complaint Plaintiff's counsel conducted an extensive economic and factual investigation and evaluation of the claims asserted. Through their arm's-length negotiations, the Parties thoroughly explored the relative strengths and weaknesses of their claims and defenses. There is no indication that this is a case in which a complaint was filed and the parties rushed to a settlement. The evidence before the court shows instead that the Parties had a keen grasp of the issues, the factual underpinnings of the claims and defenses involved, and the measure of the evidence supporting those claims and defenses. There are no obvious issues that require further

discovery to allow for an informed settlement. The Parties have recognized opposing positions regarding disputed points of law, and have entered into the Settlement based upon an appreciation of the risks of continued litigation. Nothing about the stage of the proceedings casts doubt on the fairness and reasonableness of the Settlement. *See Cotton v. Hinton,* 559 F.2d 1326, 1332 (5th Cir. 1977) (affirming approval of settlement with little formal discovery); *Mashburn v. Nat'l Healthcare, Inc.,* 684 F. Supp. 660, 669 (M.D. Ala. 1988) (holding that early settlements are to be encouraged and that only a reasonable amount of discovery is required to determine the fairness of the settlement).

24. For all of these reasons, the court finds that the Settlement is fair, reasonable, and adequate to the Settlement Class.

## II. FINAL APPROVAL OF THE SETTLEMENT

25. On the basis of the foregoing findings and the submissions and proceedings referenced above, the court finds and concludes that:

26. All members of the Settlement Class (as permanently certified herein) shall be subject to all of the provisions of the Settlement Agreement and this Final Approval Order.

27. The Settlement is hereby approved as fair, reasonable, adequate, and in the best interests of the Settlement Class in light of the complexity, expense, and likely duration of the litigation, and the risks involved in establishing liability, damages, and in maintaining a class action. The court further finds that the requirements of due process and Federal Rule of Civil Procedure 23 have been satisfied.

28. Each and every Settlement Class member who has not opted out is bound

by this Final Approval Order, the terms of the Settlement and the releases set forth below.

### III.  CERTIFICATION OF SETTLEMENT CLASS REPRESENTATIVE AND CLASS COUNSEL

29.     Plaintiff J. Michael Foley is hereby certified as Settlement Class Representative, and the law firm of Whatley Kallas, LLP ("Class Counsel") is appointed counsel to the Settlement Class.  The court concludes that Class Counsel and the Settlement Class Representative have fairly and adequately represented the Settlement Class with respect to the Settlement.

### IV.  APPROVAL OF THE APPLICATION FOR ATTORNEYS' FEES AND EXPENSES

30.     The court has reviewed the application for an award of fees and expenses submitted by Class Counsel and the declarations, exhibits, memorandum of law, and other materials submitted in support of that application.  On the basis of its review of the foregoing and on the presentations and other proceedings at the Final Fairness Hearing, the court hereby awards fees and expenses to Class Counsel.

31.     In this case, because the Sherman Antitrust Act authorizes fee-shifting, Defendant and Class Counsel have agreed to an amount to be paid directly from Defendant to Class Counsel, without having any impact on the relief to the Settlement Class. Defendant and Plaintiff have independently negotiated a combined fee and expense award of $155,000 for Class Counsel.  Since expenses of $1,189.91 will be deducted from this award, the requested fee award is $153,810.09.

32.     The court finds that a lodestar/multiplier analysis supports the reasonableness of the requested fee.  The lodestar/multiplier approach often is used in this

Circuit as a cross-check on the common fund method for determining the reasonableness of attorneys' fees awards. In this instance, however, this is not a common-fund settlement in as much as the requested fees were negotiated only after the terms of the Settlement were reached and the fee award comes directly from CTVEA rather than from funds earmarked for the Class. Even if it were a common-fund settlement, the requested fees would compare favorably with the value of the Settlement, taking into account both the direct monetary relief and the value to the Class of the injunctive relief.

33.     As to the lodestar calculation, the evidence before the court indicates Class Counsel and co-counsel devoted 345 hours to this matter, with a retail value of $138,400, as of the time of the motion for preliminary approval of the Settlement. Class Counsel represents that the hourly rates charged are the usual and customary rates charged for each individual in all of Class Counsel's cases. The court finds that the hourly rates utilized here are reasonable and are in line with rates used by attorneys in this and surrounding districts with comparable experience engaging in similarly complex consumer litigation. Comparing the attorneys' requested fee with this lodestar results in a multiplier of 1.1. Moreover, 1.1 may now overstate the multiplier since Class Counsel have continued to devote time to this matter that has not been captured within the lodestar calculation, most notably to prepare for and attend the Final Fairness Hearing.

34.     In complex cases such as this one, courts have frequently approved multipliers much higher than the multiplier requested here. *See, e.g., Behrens v. Wometco Enters., Inc.,* 118 F.R.D. 534, 549 (1988) ("In cases as complex as this, with risks of establishing liability as great as in this case, and with legal representation as fine as it was

here, a lodestar multiple of three appears to be average.") (collecting cases with multipliers ranging from a low of 2.26 to a high of 4.5); Stuart J. Logan, Dr. Jack Moshman & Beverly C. Moore, Jr., *Attorney Fee Awards In Common Fund Class Actions*, 24 Class Action Reports 167, 197 (Mar.–Apr. 2003) (noting that average multiplier found to be reasonable was 3.89); *Weiss v. Mercedes-Benz of N. Amer., Inc.*, 899 F. Supp. 1297 (D.N.J. 1995) (approving multiple of 9.3); *Cosgrove v. Sullivan*, 759 F. Supp. 166 (S.D.N.Y. 1991) (approving multiple of 8.74); *Glendora Comm. Redevelopment Agency v. Demeter*, 155 Cal. App. 3d 465 (Cal. Ct. App. 1984) (approving multiple of 12). The multiplier of 1.1 or less requested here is within the range of commonly-approved multipliers and is appropriate in recognition of the result obtained for the Class, the complexity of the issues involved, the skill and expertise of Class Counsel, and the contingent nature of the litigation. *See, e.g.*, *Holman v. Student Loan Xpress, Inc.*, 778 F. Supp. 2d 1306, 1314 (M.D. Fla. 2011) (awarding fees corresponding with a 1.77 multiplier on this basis).

35. The court therefore finds that the multiplier and the fee request it supports are reasonable. The requested award of attorney's fees is hereby APPROVED.

36. Class Counsel have incurred unreimbursed out-of-pocket expenses of $1,189.91 in successfully prosecuting and settling this Action. Class Counsel are entitled to be reimbursed for their reasonable expenses when they create a benefit for all class members. *See In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1036 (S.D. Ohio 2001) ("Counsel contributed to the creation of the Settlement Fund, and accordingly, are entitled to receive a reimbursement of their out-of-pocket expenses in the [requested]

amount.").

37.     Here, Plaintiff does not seek a separate award of expenses; he requests that Class Counsel be awarded a flat fee of $155,000, which Class Counsel will apply to both fees and expenses. The expenses are not to be deducted from the relief afforded the Settlement Class, but will come directly from CTVEA as part of the separately negotiated payment. The court hereby finds that all of Class Counsel's expenses were properly incurred and are reimbursable, and thus the requested award of expenses is APPROVED.

## V.  APPROVAL OF THE REQUESTED INCENTIVE AWARD TO PLAINTIFF

38.     Plaintiff has also requested approval of the incentive award to which the Parties have agreed, in the amount of $5,000. CTVEA has agreed to make this payment in addition to the relief to the Settlement Class. *See* Settlement Agreement at ¶ 14. The amount requested here is comparable, and even below, amounts that have been awarded in similar cases. In *Allapattah Services v. Exxon Corp.*, 454 F. Supp. 2d 1211 (S.D. Fla. 2006), the court cited numerous cases in which awards of $25,000, $20,000, $10,000, and $5,000 have been approved "to compensate named plaintiffs for the services they provided and the risks they incurred," as Plaintiff here has done. *Id.* at 1219; *see also Pinto v. Princess Cruise Lines*, 513 F. Supp. 2d 1334, 1344 (S.D. Fla. 2007) (approving incentive awards of $7,500 for each of three class representatives).

39.     The court finds that the incentive award requested is justified in light of Plaintiff's willingness to devote his time and energy to prosecuting a representative action, and is reasonable in consideration of the overall benefit conferred to Settlement Class Members. Accordingly, the requested Incentive Award to Plaintiff is APPROVED.

## VI.  FINAL JUDGMENT

40. By this Final Approval Order, and the Judgment entered pursuant to it, Plaintiff and each Settlement Class Member who has not validly excluded himself or herself from the Settlement Class shall have fully, finally, and forever released, relinquished and discharged all Section 1 Sherman Act tying claims and analogous state law claims of all Settlement Class Members as to all Defendants, and any other claims that could have been brought, whether pleaded or not pleaded, based on or arising out of the facts set forth in the First Amended Complaint.

41. Without affecting the finality of this Judgment and pursuant to Fed. R. Civ. P. 23, this court retains continuing jurisdiction over this Settlement, including the administration, consummation, and enforcement of the stipulation.  In addition, without affecting the finality of this Judgment, this court retains jurisdiction over the Parties and each member of the Settlement Class, who are deemed to have submitted to the exclusive jurisdiction of this court for any suit, action, proceeding or dispute arising out of or relating to this Order and the terms of the Settlement Agreement.

42. This court finds that there is no reason for delay, and directs the Clerk to enter judgment in accordance with the terms of this Order and Judgment as of the date of this Order and Judgment.

DONE this 8th day of September, 2016.

*/s/ Gray M. Borden*
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE